## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DAARON HUNTLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )      1:20CV862 |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant.[1] | ) |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Daaron Huntley, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 10 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 14, 16; see also Docket Entry 15 (Plaintiff's Memorandum), Docket Entry 17 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

---

[1] President Joseph R. Biden, Jr., appointed Kilolo Kijakazi as the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew M. Saul as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI (Tr. 236-42), alleging an onset date of May 7, 2013 (see Tr. 236, 239).[2] Upon denial of those applications initially (Tr. 92-101, 119-22) and on reconsideration (Tr. 102-13, 124-31), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 134-35). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 45-80.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 23-37.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 226, 341-42), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] meets the insured status requirements of the . . . Act through September 30, 2018.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since May 7, 2013, the alleged onset date.
>
> 3. [Plaintiff] has the following severe impairments: osteoarthritis-right knee; obstructive sleep apnea; pulmonary sarcoidosis; and obesity.
>
> . . .
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

---

[2] Plaintiff's application for SSI does not appear in the record.

. . .

5. . . . [Plaintiff] has the residual functional capacity to perform sedentary work . . . except he is prohibited from climbing ladders, ropes, and scaffolds. He would need to avoid concentrated exposure to extreme cold and heat, to humidity and wetness, and to irritants such as fumes, odors, dust, gases, and poorly ventilated areas. He would also need to avoid concentrated exposure to slippery and uneven surfaces as well as hazardous machinery, unprotected heights, and open flames.

. . .

6. [Plaintiff] is unable to perform any past relevant work.

. . .

10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [he] can perform.

. . .

11. [Plaintiff] has not been under a disability, as defined in the . . . Act, from May 7, 2013, through the date of this decision.

(Tr. 28-36 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." <u>Hines v. Barnhart</u>, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." <u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981).

3

Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence

4

allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's]

---

[3] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[4] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, *i.e.*, "[i]f a claimant's impairment

---

[4] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ("RFC")." Id. at 179.[5]  Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled.  Id. at 179-80.  However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job."  Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled.  Hines, 453 F.3d at 567.[6]

---

[5]  "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations."  Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)."  Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)."  Hines, 453 F.3d at 562-63.

[6]  A claimant thus can establish disability via two paths through the SEP.  The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, (continued...)

7

## B. Assignments of Error

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ erred by failing to consider Plaintiff's [degenerative disc disease ('DDD')] in the lumbar and thoracic spine a severe impairment and include resulting limitations in the RFC" (Docket Entry 15 at 4 (bold font and single-spacing omitted));

2) "the ALJ erred by evaluating Plaintiff's obesity under [Social Security Ruling 02-1p, Titles II and XVI: Evaluation of Obesity, 2002 WL 34686281 (Sept. 12, 2002) ('SSR 02-1p')], which was rescinded, instead of [Social Security Ruling 19-2p, Titles II and XVI: Evaluating Cases Involving Obesity, 2019 WL 2374244 (May 20, 2019) ('SSR 19-2p')]" (id. at 7 (bold font and single-spacing omitted)); and

3) "[t]he ALJ erred by failing to perform a proper function-by-function evaluation of Plaintiff's ability to sit, stand, and walk when forming the RFC" (id. at 10 (bold font and single-spacing omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 17 at 6-16.)

---

[6] (...continued)
review does not proceed to the next step.").

## 1. DDD

In Plaintiff's first issue on review, he contends that "[t]he ALJ erred by failing to consider Plaintiff's DDD in the lumbar and thoracic spine a severe impairment and include resulting limitations in the RFC." (Docket Entry 15 at 4 (bold font and single-spacing omitted).) In that regard, Plaintiff contends that "the record contains medical documentation of medically determinable impairments that could cause [Plaintiff]'s back pain a[s well as] ongoing complaints and treatment for his back pain." (Id. at 5; see also id. at 5-6 (outlining testimony and evidence Plaintiff believes supports the severity of his back impairments (citing Tr. 66-69, 73, 364, 401-02, 429, 445, 488, 530, 556, 580, 583)).) According to Plaintiff, his DDD qualifies as a "severe impairment because the degree of pain he suffers and the impact of the condition on his ability to sit, stand, and walk indicates that this condition is obviously more than a 'slight abnormality' and would interfere with his ability to work." (Id. at 6 (quoting Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984)).) Plaintiff deems that alleged step-two error by the ALJ harmful, because the ALJ did not "consider[ Plaintiff]'s limitations resulting from [] DDD in [the] RFC determination," such as "limitations on how long [Plaintiff] can stand or walk at one time" and "limitations . . . on [Plaintiff]'s ability to sit." (Id. at 7 (citing Dowling v.

9

Commissioner of Soc. Sec., 986 F.3d 377, 388 (4th Cir. 2021)).)

Plaintiff's contentions miss the mark.

"At step 2 of the [SEP], [the ALJ] determine[s] whether an individual has a severe medically determinable physical or mental impairment or combination of impairments that has lasted or can be expected to last for a continuous period of at least 12 months or end in death." Social Security Ruling 16-3p, Titles II & XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, at *11 (Oct. 25, 2017) ("SSR 16-3p") (emphasis added). The Commissioner's regulations provide that a medically determinable impairment "must result from anatomical[ or] physiological . . . abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques[ and] . . . must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. §§ 404.1521, 416.921 (emphasis added).[7] Furthermore, an ALJ cannot rely on a claimant's own "statement of symptoms, a diagnosis, or a medical opinion to establish the existence of a[ medically determinable] impairment[ ]." Id. (emphasis added).[8]

---

[7] The regulations define "objective medical evidence" as "laboratory findings" and/or "signs," i.e., "abnormalities that can be observed, apart from [a claimant's] statements (symptoms)." 20 C.F.R. §§ 404.1502(f), (g), 416.902(f), (g).

[8] Applicable to benefits claims filed on or after March 27, 2017 (such as Plaintiff's DIB and SSI claims (see Tr. 26, 236)), the SSA amended the section governing the establishment of medically determinable impairments. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 F.R. 5844-01, 5868-69, 2017 WL 168819 (Jan. 18, 2017). Prior to those amendments, an ALJ considered
(continued...)

"After [the ALJ] establish[es] that [a claimant] ha[s] a medically determinable impairment[], then [the ALJ] determine[s] whether [that] impairment is severe." Id. An impairment fails to qualify as "severe" if it constitutes "only a slight abnormality . . . which would have no more than a minimal effect on an individual's ability . . . to perform basic work activities." Social Security Ruling 85-28, Titles II and XVI: Medical Impairments that Are Not Severe, 1985 WL 56856, at *3 (1985) ("SSR 85-28"). Applicable regulations further identify physical "basic work activities" as including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, [and] handling." 20 C.F.R. §§ 404.1522(b), 416.922(b). Plaintiff bears the burden of proving severity at step two. Hunter, 993 F.2d at 35; see also Kirby v. Astrue, 500 F.3d 705, 708 (8th Cir. 2007) ("Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard . . . ." (internal citation omitted)).

---

[8] (...continued)
medical signs, laboratory findings, and a claimant's own statements to determine the presence of a medically determinable impairment. See 20 C.F.R. §§ 404.1508, 416.908 (version effective prior to Jan. 18, 2017). The amendments recodified the rule at Sections 404.1521 and 416.921 and now preclude ALJs from considering a claimant's "statement of symptoms, a diagnosis, or a medical opinion to establish the existence of a[ medically determinable] impairment[]." 20 C.F.R. §§ 404.1521, 416.921; see also SB v. Commissioner of Soc. Sec. Admin., No. CV-20-1842, 2021 WL 5150092, at *4 (D. Ariz. Nov. 5, 2021) (unpublished) ("To the extent that [prior district court and appellate cases within the Ninth Circuit] hold that medical opinions and diagnoses are relevant to determine an impairment at step two, that has been expressly foreclosed by the text of § 404.1521. Instead, as discussed above, the [c]ourt finds that only the objective medical evidence in [the p]laintiff's medical records can be relevant to whether she had a medically determinable impairment . . . ." (internal citation omitted)).

11

The ALJ provided the following analysis supporting his step-two finding regarding Plaintiff's lower back pain:

> [Plaintiff ] alleges he has lower back pain. Pain or other symptoms may be an important factor contributing to functional loss. However, [SSR] 16-3p states that "an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability" and "symptoms, such as pain, fatigue, shortness of breath, weakness, nervousness, or periods of poor concentration will not be found to affect the ability to perform work-related activities . . . unless medical signs or laboratory findings show a medically determinable impairment is present."
>
> In accordance with 20 CFR 404.1520(c) and 416.920(c), "if you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment." In this case, the record does not clearly establish the pain was a symptom of a medi[c]ally determinable impairment of the lower back that significantly limits [Plaintiff]'s physical ability to do basic work activities. Accordingly, [the ALJ] find[s] that the alleged pain is non-severe . . . .

(Tr. 29 (emphasis added).) As the language emphasized above shows, the ALJ's analysis improperly conflated the two distinct findings at step two of the SEP, i.e., 1) whether Plaintiff had a medically determinable lower back impairment under 20 C.F.R. §§ 404.1521 and 416.921 and, if so, 2) whether that impairment qualified as severe under 20 C.F.R. §§ 404.1522(b) and 416.922(b). If "the record d[id] not clearly establish [that Plaintiff's lower back pain] was a symptom of a medi[c]ally determinable impairment" (Tr. 29), that finding should have ended the ALJ's analysis of Plaintiff's lower back pain at step two, as a finding of a medically determinable

impairment constitutes a prerequisite to rating the severity of that impairment, see 20 C.F.R. §§ 404.1521, 416.921. In this case, however, the ALJ proceeded to also find that Plaintiff's lower back pain did not "significantly limit[ Plaintiff]'s physical ability to do basic work activities" and therefore qualified as "non-severe." (Tr. 29.) The ambiguity of the ALJ's step two finding regarding Plaintiff's low back pain, however, does not amount to prejudicial error, because the ALJ's threshold finding that Plaintiff's low back pain did not constitute a medically determinable impairment enjoys the support of substantial evidence in the record.

Most significantly, the record lacks any objective evidence that confirms the presence of a medically determinable lower back impairment. Although Plaintiff asserts that his obesity prevented him from obtaining an MRI of his lumbar spine (see Docket Entry 15 at 5), he does not assert that his obesity prevented him from obtaining other imaging tests of his lower back, such as a CT scan or x-ray, or precluded his medical providers from gauging his gait, strength, range of motion, or other musculoskeletal and neurological functioning (see id.), and Plaintiff bears the burden of demonstrating the existence of a medically determinable lower back impairment, see generally Bowen v. Yuckert, 482 U.S. 137, 146 (1987); accord Hunter, 993 F.2d at 35; see also Shrecengost v. Colvin, No. 14CV506, 2015 WL 5126117, at *3 (W.D.N.Y. Sept. 1, 2015) (unpublished) ("[The p]laintiff bears the burden of

establishing a [medically determinable] severe impairment at step two by furnishing medical and other evidence of the existence thereof as the Commissioner may require, and will not be considered disabled if such evidence is not provided." (citing 42 U.S.C. § 423(d)(5)(A))).

Plaintiff points out that orthopedic records reflect assessments of "chronic axial low back pain" due to "mild lumbar [DDD]" (Docket Entry 15 at 5 (emphasis added) (citing Tr. 364); see also Tr. 362 assessing "probable very mild DDD" (emphasis added)), but those (limited and equivocal) treatment notes do not establish a medically determinable lower back impairment for two reasons. First, all but one of those treatment notes pre-date Plaintiff's alleged onset date (see Tr. 362-75) and thus, in large part, they do not reflect Plaintiff's condition during the relevant period in this case. Second, and more significantly, the treatment notes in question are devoid of any objective findings substantiating the presence of a medically determinable lower back impairment. (See generally Tr. 362-375; see also Tr. 362 (noting negative straight leg raise); 364 (documenting "[p]leasant appearing healthy male . . . in no obvious distress"); 375 (recording no severe acute distress and Plaintiff's ability to walk unassisted)). As discussed above, a diagnosis and/or a medical opinion, without supporting "anatomical[ or] physiological . . . abnormalities that can be shown by medically acceptable clinical

14

and laboratory diagnostic techniques[ and] . . . established by objective medical evidence from an acceptable medical source," 20 C.F.R. §§ 404.1521, 416.921 (emphasis added), do not suffice to establish a medically determinable impairment, see 20 C.F.R. §§ 404.1521, 416.921; see also SB v. Commissioner of Soc. Sec. Admin., No. CV-20-1842, 2021 WL 5150092, at *6 (D. Ariz. Nov. 5, 2021) (unpublished) (finding no error where ALJ did not consider two doctors' "medical opinions at step two[, because] such evidence is clearly precluded by 20 C.F.R. § 404.1521"); Laggner v. Commissioner of Soc. Sec., No. 1:20CV166, 2021 WL 5077590, at *3 (N.D. Ind. Nov. 2, 2021) (unpublished) ("[The plaintiff] argues that [her] neuropsychologist . . . diagnosed [the plaintiff] with traumatic brain injury and that this demonstrated a medically determinable impairment which should have been considered in the RFC. . . . However, what [the plaintiff] fails to point to is any objective evidence establishing the existence of traumatic brain injury. . . . [M]ere diagnosis from an acceptable medical source, without objective medical evidence, is not sufficient to establish a medically determinable impairment at [s]tep [two of the SEP]."); Jeffrey G. v. Commissioner of Soc. Sec., No. 5:20CV1016, 2021 WL 4844146, at *6 (N.D.N.Y. Oct. 18, 2021) (unpublished) ("[The] plaintiff's subjective complaints alone are insufficient to satisfy his burden of proving a medically determinable impairment, and the record is devoid of any diagnostic test results during the period

15

in question indicating the presence of carpal tunnel syndrome."); Saric v. Kijakazi, No. 4:20CV414, 2021 WL 4439279, at *3 (E.D. Mo. Sept. 28, 2021) (unpublished) (finding "that substantial evidence support[ed] the ALJ's determination that [the p]laintiff's neuropathy [wa]s not a medically determinable impairment" where, "upon a complete and thorough review of the medical record, any objective indicia of neuropathy [wa]s missing from the record"); Jamie L. V. v. Kijakazi, No. 3:20CV263, 2021 WL 4243438, at *8 (E.D. Va. Sept. 17, 2021) (unpublished) ("The ALJ did not err in concluding that [the p]laintiff's blackouts were not a 'medically determinable' impairment. . . . [The p]laintiff has not identified any laboratory finding or other medical observation to confirm her blackouts.").

Plaintiff additionally notes that "a chest radiograph showed degenerative change in the thoracic spine" (Docket Entry 15 at 5 (emphasis added) (citing Tr. 556)), as well as that "CT imaging of the chest without contrast revealed moderate thoracic spondylosis" (id. (emphasis added) (citing Tr. 580)). However, Plaintiff underwent those tests to determine the cause of his breathing difficulties, and, notably, the tests reflected incidental findings of degenerative changes in the thoracic spine (see Tr. 556, 580; see also Tr. 480 (another chest CT reflecting degenerative changes in Plaintiff's thoracic spine)), rather than Plaintiff's lumbar

16

spine where Plaintiff complained of pain (see, e.g., Tr. 370, 374, 400).

Plaintiff further emphasizes that consultative medical examiner Mark L. Fields found tenderness in Plaintiff's paraspinal muscles from T8 to L5 (see Docket Entry 15 at 5 (citing Tr. 401)), but that finding confirmed only the presence of pain in Plaintiff's lower back, which the ALJ acknowledged (see Tr. 29, 32). Moreover, although Dr. Fields documented a positive supine straight leg raising test bilaterally at 30 degrees, he recorded a negative straight leg raising test in the sitting position (see Tr. 401), and he diagnosed only "[l]ow back pain with radicular symptoms" (Tr. 402 (emphasis added)). Given the ALJ's discussion of consistently normal gait, strength, neurological, and range of motion findings in the record (see Tr. 32-33 (citing Tr. 386, 429-35, 445, 452, 459, 472, 484, 488, 528, 530, 532, 583, 585)), that one-time, partially positive straight leg raising test would not have compelled the ALJ to find a medically determinable lower back impairment.

Moreover, even if the ALJ should have deemed Plaintiff's back condition both a medically determinable impairment and severe, any such error would remain harmless under the circumstances presented by this case. See generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a

17

perfect opinion unless there is reason to believe that the remand might lead to a different result"). Where an ALJ finds at least one severe impairment, any failure to identify more generally cannot constitute reversible error, because, "upon determining that a claimant has one severe impairment, the [ALJ] must continue with the remaining steps in his disability evaluation." <u>Maziarz v. Secretary of Health & Human Servs.</u>, 837 F.2d 240, 244 (6th Cir. 1987); <u>accord</u> <u>Oldham v. Astrue</u>, 509 F.3d 1254, 1256-57 (10th Cir. 2007); <u>Lewis v. Astrue</u>, 498 F.3d 909, 911 (9th Cir. 2007); <u>Lauver v. Astrue</u>, No. 2:08CV87, 2010 WL 1404767, at *4 (N.D.W. Va. Mar. 31, 2010) (unpublished); <u>Washington v. Astrue</u>, 698 F. Supp. 2d 562, 579 (D.S.C. 2010); <u>Jones v. Astrue</u>, No. 5:07CV452, 2009 WL 455414, at *2 (E.D.N.C. Feb. 23, 2009) (unpublished). Moreover, a finding at step two that Plaintiff has a severe impairment does not <u>require</u> the ALJ to include any limitations arising from such impairment in the RFC:

> The determination of a "severe" impairment at step two of the sequential evaluation process is a de minimis test, designed to weed out unmeritorious claims. <u>See</u> <u>Bowen[]</u>, 482 U.S. [at 153 ]. A finding of de minimis limitations is not proof that the same limitations have the greater significant and specific nature required to gain their inclusion in an RFC assessment at step four. <u>See, e.g.,</u> <u>Sykes v. Apfel</u>, 228 F.3d 259, 268 n.12 (3d Cir. 2000).

<u>Hughes v. Astrue</u>, No. 1:09CV459, 2011 WL 4459097, at *10 (W.D.N.C. Sept. 26, 2011) (unpublished).

Here, having found Plaintiff suffered from at least one severe impairment (<u>see</u> Tr. 29), the ALJ proceeded to subsequent steps of

the SEP and adequately considered Plaintiff's low back pain as part of his RFC determination. First, the ALJ acknowledged Plaintiff's testimony "that he [wa]s unable to work because of . . . back issues," "that the most pain [wa]s in his back," and "that he could stand for about 10 minutes, walk the distance between a parking spot and door of a grocery store, and sit for about 30 minutes depending on the chair." (Tr. 32; see also Tr. 66, 69-71.) The ALJ, however, found that "the record d[id] not consistently support" Plaintiff's "statements about the intensity, persistence, and limiting effects of his . . . symptoms" (Tr. 32), a finding unchallenged by Plaintiff (see Docket Entry 15). In particular, the ALJ deemed Plaintiff's daily activities "inconsistent with the alleged extent of [Plaintiff's] difficulties," noting that Plaintiff lived in a two-story home and climbed the stairs "despite the alleged difficulty," prepared simple meals, drove, and "sought any job that would hire him, including call-center and custodial work." Id. The ALJ further commented that "[a] review of [Plaintiff's] work history shows that he made minimal earnings prior to the alleged disability onset date," and that such a "limited work history raise[d] a question as to whether his unemployment was actually due to medical impairments in light of inconsistent medical findings." (Tr. 25.)

In addition, the ALJ discussed the objective findings in the medical evidence, noting repeated findings of normal gait, range of

19

motion, and strength. (See Tr. 32-33 (citing Tr. 386, 429-35, 445, 452, 459, 472, 484, 488, 528, 530, 532, 583, 585).) Although, in that discussion, the ALJ expressly mentioned only Plaintiff's medically determinable impairments of obesity and right knee osteoarthritis (see Tr. 32), many of the treatment notes the ALJ discussed reflected Plaintiff's treatment for (and objective findings regarding) both right knee and back pain (see Tr. 32-33 (citing Tr. 386, 429-35, 445, 484, 488, 528, 530, 532, 583, 585)). Moreover, the ALJ expressly found, in light of Plaintiff's consistently normal gait, that "the record d[id] not support a finding that a handheld assistive device was medically necessary." (Tr. 33.)

In light of those analyses, the ALJ sufficiently addressed Plaintiff's low back pain (whether classified as a medically determinable, severe impairment or not) by including significant limitations on lifting, carrying, pushing, and pulling (a maximum of only 10 pounds), as well as a restriction to two hours total of standing and walking, and a prohibition of climbing ladders, ropes, and scaffolds in the RFC and dispositive hypothetical question to the VE. (See Tr. 31, 76-77.) Significantly, beyond the assertion that the RFC should have included unquantified "limitations on how long [Plaintiff] can stand or walk at one time" and "limitations . . . on [Plaintiff]'s ability to sit" (Docket Entry 15 at 7), Plaintiff has not identified any specific, additional limitations

20

that a finding of a severe low back impairment would have compelled the ALJ to include in the RFC, let alone demonstrated that such additional limitations would have precluded him from performing the jobs cited by the VE and adopted by the ALJ at step five of the SEP (see id. at 4-7).

In sum, Plaintiff had not shown prejudicial error arising out of the ALJ's step two findings regarding Plaintiff's lower back pain.

## 2. Obesity

Plaintiff next asserts that "[t]he ALJ erred by evaluating Plaintiff's obesity under SSR 02-1p, which was rescinded, instead of SSR 19-2p." (Id. at 7 (bold font and single-spacing omitted).) In particular, Plaintiff maintains that the SSA issued SSR 19-2p to "'reflect changes to the rules [the SSA has] published, and advances in medical knowledge, since publication of SSR 02-1p.'" (Id. at 8 (quoting SSR 19-2p, 2019 WL 2374244, at *2).) According to Plaintiff, "SSR 19-2p indicates that the limiting effects of obesity must be considered when assessing a person's RFC," "that a[n obese] person may have limitations in sitting, standing, and walking, and that fatigue may affect a[n obese] person's physical and mental ability to sustain work ability," as well as "that the combined effects of obesity with other impairments may be greater than the effects of each of the impairments considered separately." (Id. (citing SSR 19-2p, 2019 WL 2374244, at *4).) Additionally,

21

Plaintiff argues that "[t]he ALJ's statements that the [objective] medical evidence d[id] not reflect exacerbation of other medical impairments [by Plaintiff's obesity] is incorrect" (id. at 9 (referencing Tr. 33), and that Plaintiff could "'rely exclusively on subjective evidence to prove the severity, persistence, and limiting effects of [his] symptoms'" (id. at 9-10 (quoting Arakas v. Commissioner of Soc. Sec. Admin., 983 F.3d 83, 98 (4th Cir. 2020))).  Those contentions miss the mark.

Plaintiff correctly notes that "[t]he ALJ issued his unfavorable decision on August 16, 2019" (id. at 8 (citing Tr. 23-43)) and "state[d] that he considered [Plaintiff]'s obesity pursuant to SSR 02-[]1p" (id. (citing Tr. 31)), but that the SSA "rescinded and replaced" SSR 02-1p with "SSR 19-2p effective May 20, 2019" (id. (citing SSR 19-2p, 2019 WL 2374244, at *5 ("This SSR is applicable on May 20, 2019."))).  As the Commissioner argues, however, Plaintiff failed to show "how SSR 19-2p presents a materially different standard, compared to SSR 02-1p" (Docket Entry 17 at 12), because "each of Plaintiff's references to SSR 19-2p have a nearly identical provision in SSR 02-[]1p:

| | |
|---|---|
| Plaintiff states "SSR 19-2p indicates that the limiting effects of obesity must be considered when assessing a person's [RFC]." ([Docket Entry 15 at] 8[.]) | SSR 02-[]1p stated, "we will consider any functional limitations resulting from the obesity in the [RFC] assessment." SSR 02-[]1p, 2002 WL 34686281, at *7. |

| | |
|---|---|
| Plaintiff states that SSR 19-2p "acknowledges that a person may have limitations in sitting, standing, and walking, and that fatigue may affect a person's physical and mental ability to sustain work." ([Docket Entry 15 at] 8[.])[] | SSR 02-[]1p stated, "[o]besity can cause limitation of function . . . [a]n individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling" and "[i]n cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work." [SSR 02-1p, 2002 WL 34686281,] at *5. |
| Plaintiff states that SSR 19-2p "notes that the combined effects of obesity with other impairments may be greater than the effects of each of the impairments considered separately." ([Docket Entry 15 at] 8[.])[] | SSR 02-[]1p stated, "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." [SSR 02-1p, 2002 WL 34686281,] at *1. |
| Plaintiff states, "SSR 19-2p indicates that all symptoms, including pain, will be considered." ([Docket Entry 15 at] 9[.]) | SSR 02-[]1p stated, "[w]e will also consider the effects of any symptoms (such as pain or fatigue) that could limit functioning." [SSR 02-1p, 2002 WL 34686281,] at *4. |

(Docket Entry 17 at 13.) In light of those nearly identical provisions, Plaintiff has not demonstrated that the ALJ's error in applying SSR 02-1p prejudiced his claims in any way. See generally Fisher, 869 F.2d at 1057 (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

Plaintiff's Arakas-based argument fares no better. (See Docket Entry 15 at 9-10.) As an initial matter, Plaintiff

overstates the reach of <u>Arakas</u>.  That case holds only "that ALJs may not rely on objective medical evidence (or the lack thereof) — even as just one of multiple factors — to discount a claimant's subjective complaints regarding symptoms of <u>fibromyalgia or some other disease that does not produce such evidence</u>."  <u>Arakas</u>, 983 F.3d at 97 (emphasis added).  Plaintiff makes no effort to argue that his obesity constitutes a "disease that does not produce [objective medical] evidence," <u>id.</u>  (Docket Entry 15 at 9-10.)

Furthermore, although <u>Arakas</u> "reiterate[d] the long-standing law in [the Fourth C]ircuit that disability claimants are entitled to rely exclusively on subjective evidence to prove the severity, persistence, and limiting effects of their symptoms," <u>Arakas</u>, 983 F.3d at 98, long-standing cases containing the substance of that holding, such as <u>Craig</u> and <u>Hines</u> (among others), clarify that, "[a]lthough a claimant's allegations about h[is] pain may not be discredited <u>solely</u> because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including <u>objective evidence</u> of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges []he suffers," <u>Craig</u>, 76 F.3d at 595 (emphasis added); <u>see also</u> <u>Hines</u>, 453 F.3d at 565 n.3 (quoting <u>Craig</u>, 76 F.3d at 595).  In other words, under the appropriate circumstances, an ALJ <u>may</u> choose to rely exclusively on

24

a claimant's subjective symptom reports to find disabling symptoms; however, Arakas does not compel ALJs to consider only subjective evidence, as such a requirement would conflict with the regulations, which plainly require ALJs to consider a variety of factors, including objective medical evidence, in evaluating the intensity, persistence, and limiting effects of symptoms. See 20 C.F.R. §§ 404.1529(c), 416.929(c) (directing ALJs to assess a claimant's medical history, medical signs and laboratory findings, daily activities, testimony about nature and location of pain, medication and other treatment used to alleviate pain, along with medical opinions from examining and non-examining sources).

Here, in compliance with Arakas, Hines, and Craig, the ALJ considered the objective medical evidence as one part of his evaluation of the limiting effects of Plaintiff's obesity. In that regard, the ALJ found Plaintiff's obesity a severe impairment at step two of the SEP (see Tr. 29), and, at step three, indicated that he "ha[d] considered the combination of [Plaintiff]'s obesity with the other impairments," as well as "the added impact that obesity ha[d] on [Plaintiff's] symptoms," but "f[ou]nd that the added effect [did not] cause[] his impairments to meet or equal a listing" (Tr. 31). The ALJ then provided the following analysis of Plaintiff's obesity in the discussion of the RFC:

> The objective medical evidence does not consistently reflect the alleged extent of limiting effects related to the obesity and osteoarthritis of the right knee. The July 2015 evidence shows that [Plaintiff] was obese with

25

splitting [sic] edema of the extremities. However, the August 2015 evidence shows that he maintained normal gait and strength as well as intact knees. The October 2015 right knee x-ray showed moderate osteoarthritis. The evidence shows physical examination findings, including being globally obese, but neurologically normal despite edema of the extremities. These findings were unchanged from July 2015. The November 2015 medical consultative examination report shows that he weighed 475 pounds. The report further shows that he had an antalgic gait secondary to lower back pain and knee pain, but he did not use assistive devices. This is consistent with the July and August 2017 physical examination findings.

The March 2018 evidence shows that [Plaintiff]'s BMI was 84.4, but the physical examination was generally normal, including normal respiratory, musculoskeletal, and neurological functioning. This is reasonably consistent with the May 2018 evidence and physical examination findings. Although he weighed 529 pounds as of August 2018, he still maintained normal range of motion. The September 2018 evidence showed normal physical examination findings, including normal gait, cardiovascular, and respiratory functioning. The September 2018 [sic] showed decreased breath sounds, but there was no respiratory distress or wheezing. He also maintained normal range of motion.

The October 2018 evidence shows normal gait in addition to normal cardiovascular and respiratory functioning. The November 2018 evidence shows that [Plaintiff]'s BMI was 76.94. The November 2018 evidence shows that his obesity limited evaluation of the abdomen and that he had edema. However, he maintained normal gait, respiratory, and cardiovascular functioning as of November 2018. The December 2018 evidence showed normal gait as well as normal cardiovascular and respiratory functioning despite his BMI being 73.5. The January and February 2019 evidence shows normal physical examination findings, including normal respiratory and cardiovascular functioning as well as normal gait. Although these objective medical findings support the existence of the obesity, the findings of normal gait throughout the record show that the obesity and osteoarthritis were not significantly limiting beyond a sedentary restriction on his ability to ambulate. Furthermore, the objective medical evidence does not reflect that the obesity exacerbated any related impairments.

26

(Tr. 32-33 (internal parenthetical citations omitted).)
Thereafter, the ALJ deemed Plaintiff's daily activities
"inconsistent with the alleged extent of [Plaintiff's]
difficulties," noting that Plaintiff lived in a two-story home and
climbed the stairs "despite the alleged difficulty," prepared
simple meals, drove, and "sought any job that would hire him,
including call-center and custodial work." (Tr. 32.) The ALJ also
found "persuasive" the opinions of the state agency medical
consultants (Tr. 35), who included significant exertional
restrictions in the RFC expressly to account for Plaintiff's
obesity (see Tr. 96-97, 108-09).[9] The ALJ further commented that
"[a] review of [Plaintiff's] work history shows that he made
minimal earnings prior to the alleged disability onset date," and
that such a "limited work history raise[d] a question as to whether
his unemployment was actually due to medical impairments in light
of inconsistent medical findings." (Tr. 25.) Thus, in analyzing
Plaintiff's obesity, the ALJ properly considered the combined
effects of Plaintiff's obesity with his other impairments,

---

[9] The ALJ stated that the reconsideration-level consultant limited Plaintiff to
"occasionally lift[ing] 10 pounds, which is consistent with sedentary work."
(Tr. 34-35 (citing Tr. 108).) That consultant actually limited Plaintiff to
occasionally lifting 20 pounds and frequently lifting 10 pounds (which is
consistent with light work, see 20 C.F.R. §§ 404.1567(b), 416.967(b)) but to two
hours total of standing and walking and six hours total of sitting (which is
consistent with sedentary work, see 20 C.F.R. §§ 404.1567(a), 416.967(a)). (See
Tr. 108-09.) The ALJ's misstatement did not prejudice Plaintiff, as the ALJ
found Plaintiff more limited than the consultant in terms of Plaintiff's ability
to lift/carry/push/pull, i.e., restricted him to sedentary work (see Tr. 31).

27

Plaintiff's daily activities, Plaintiff's work history, and the opinion evidence, in addition to the objective medical evidence.

Plaintiff additionally argues that "[t]he ALJ's statements that the [objective] medical evidence d[id] not reflect exacerbation of other medical impairments [by Plaintiff's obesity] is incorrect." (Docket Entry 15 at 9 (referencing Tr. 33).) According to Plaintiff, his "medical providers certainly seem[ed] to believe that his obesity [wa]s impacting his other conditions and that it [wa]s important to take even invasive means to lower his weight." (Id.) In support of that assertion, Plaintiff cites a remark pre-dating his alleged onset date from Dr. Richard D. Ramos in 2012 "'that weight loss could definitely help with [Plaintiff's] knee pain'" and "'may [or may not] help with his back pain'" (id. (quoting Tr. 362)), as well as a statement from bariatric surgeon Dr. Bruce Jon that duodenal switch surgery "would be 'most important'" for Plaintiff (id. (quoting Tr. 452)). Plaintiff further points out that "it is impossible to know the extent of several of [his] underlying conditions because his obesity prevents proper medical assessment with objective testing." (Id.)

As an initial matter, the ALJ did not clarify what he meant by "related impairments" in his statement that "the objective medical evidence does not reflect that the obesity exacerbated any related impairments." (Tr. 33 (emphasis added).) Considered in the

context of the ALJ's entire decision, however, the ALJ's statement could not mean that Plaintiff's obesity had <u>no</u> impact on any of Plaintiff's other impairments. As discussed above, the ALJ noted at step three of the SEP that he "ha[d] considered the <u>added impact</u> [Plaintiff's] obesity ha[d] on [his] symptoms." (Tr. 31 (emphasis added).) Moreover, the ALJ evaluated the objective medical evidence relating to Plaintiff's "obesity and osteoarthritis of the right knee" together (Tr. 32) and found that, "[a]lthough these objective medical findings support the existence of the obesity, the findings of normal gait throughout the record show that the <u>obesity and osteoarthritis</u> were not significantly limiting beyond a <u>sedentary restriction on his ability to ambulate</u>" (Tr. 33 (emphasis added)). Thus, consistent with Dr. Ramos's statement that Plaintiff's obesity impacted his knee pain,[10] the ALJ found that Plaintiff's obesity and right knee arthritis, when considered in combination, significantly limited Plaintiff's ability to ambulate and confined him to the sedentary level of exertion. Additionally, Dr. Jon's remark that duodenal switch surgery "would be most important" for Plaintiff (Tr. 452) does not aid his cause, because that ambiguous remark does not link Plaintiff's obesity to any particular impairment and reflects a general sense that Plaintiff's obesity likely will negatively impact his long-term

---

[10] Notably, Dr. Ramos offered only an ambiguous opinion as to whether Plaintiff's obesity impacted his back pain. (<u>See</u> Tr. 362 (opining that "weight loss . . . may or may not help with [Plaintiff's] back pain").)

health, rather than a specific opinion that his obesity, at that time, actually exacerbated in any concrete way any particular impairment.

Furthermore, as discussed above, although Plaintiff alleges that his obesity prevented him from obtaining an MRI of his lumbar spine, he maintained neither that his obesity precluded him from procuring other imaging tests, nor that his size prevented his practitioners from testing his range of motion, gait, and strength (see Docket Entry 15 at 5, 9), all of which, as the ALJ noted, consistently tested normal (see Tr. 32-33 (citing Tr. 386, 429-35, 445, 452, 459, 472, 484, 488, 528, 530, 532, 583, 585)). Accordingly, Plaintiff has not shown the "impossib[ility]" of determining "the extent of . . . his underlying conditions." (Docket Entry 15 at 9.)

Put simply, Plaintiff's second issue on review falls short.

### 3. Function-by-Function Analysis

Lastly, Plaintiff asserts that "[t]he ALJ erred by failing to perform a proper function-by-function evaluation of Plaintiff's ability to sit, stand, and walk when forming the RFC." (Id. at 10 (bold font and single-spacing omitted).) More specifically, Plaintiff highlights his testimony and the medical evidence he believes supports greater limitations on his ability to sit, stand, and walk (see id. at 10-11 (citing Tr. 67-70, 73, 267, 401)), and argues that, "despite summarizing th[e medical] evidence which is

30

supportive of [Plaintiff]'s testimony, the ALJ did not then explain why [Plaintiff] was not more limited with sitting, standing, and walking, as [Plaintiff] testified" (id. at 11), and "further fail[ed] to explain how long [Plaintiff] can maintain a sitting or standing posture or sustain walking *at one time* [and] did not address the frequency of position change in the RFC" (id. at 12 (citing Tr. 31)). According to Plaintiff, "[t]he calculation of frequency of position change (much like the calculation of time off task) can be outcome determinative and the ALJ needs to explain how that number was arrived upon." (Id. (citing Holland v. Commissioner of Soc. Sec. Admin., Civ. No. 17-1784, 2018 WL 1970745, at *10 (D. Md. Apr. 25, 2018) (unpublished) (remanding where ALJ "failed to explain how her factual findings translate[d] into a finding that [the p]laintiff would be off-task less than 15% of the day" (internal quotation marks omitted)).) Plaintiff additionally points out that "[t]he Fourth Circuit recently . . . determin[ed] that the ALJ should have specifically addressed the claimant's testimony regarding how long he [sic] was capable of sitting, especially in light of a sedentary RFC, and, further, that ALJs have to perform a function-by-function analysis of contested and relevant functions." (Id. (citing Dowling, 986 F.3d at 388-89).) Plaintiff's arguments do not entitle him to relief.

RFC measures the most a claimant can do despite any physical and mental limitations. Hines, 453 F.3d at 562; 20 C.F.R.

31

§§ 404.1545(a), 416.945(a). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. See Hines, 453 F.3d at 562-63; 20 C.F.R. §§ 404.1545(b), 416.945(b). The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy). See 20 C.F.R. §§ 404.1567, 416.967. Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level. See 20 C.F.R. §§ 404.1569a(c), 416.969a(c).

An ALJ need not discuss every piece of evidence in making an RFC determination. See Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014). However, "the ALJ must both identify evidence that supports his [or her] conclusion and build an accurate and logical bridge from that evidence to [that] conclusion." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (internal emphasis, quotation marks, and brackets omitted). As to the role of the function-by-function analysis in that determination, the relevant administrative ruling states: "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Social Security

32

Ruling 96-8p, <u>Policy Interpretation Ruling Titles II and XVI:</u>
<u>Assessing [RFC] in Initial Claims</u>, 1996 WL 374184, at *1 (July 2,
1994) ("SSR 96-8p").

The Fourth Circuit has addressed this administrative ruling
and the issue of whether an ALJ's failure to articulate a
function-by-function analysis necessitates remand. <u>See</u> <u>Mascio v.</u>
<u>Colvin</u>, 780 F.3d 632, 636-37 (4th Cir. 2015). Specifically, it
stated "that a per se rule is inappropriate given that remand would
prove futile in cases where the ALJ does not discuss functions that
are irrelevant or uncontested," <u>id.</u> at 636, but that "'remand may
be appropriate where an ALJ fails to assess a claimant's capacity
to perform relevant functions, despite contradictory evidence in
the record, or where other inadequacies in the ALJ's analysis
frustrate meaningful review,'" <u>id.</u> (internal brackets and ellipsis
omitted) (quoting <u>Cichocki v. Astrue</u>, 729 F.3d 172, 177 (2d Cir.
2013)).

Here, the ALJ did not perform a function-by-function analysis
of Plaintiff's abilities to sit, stand, and walk (<u>see</u> Tr. 31-35);
however, no basis for remand exists, because the ALJ's decision
nevertheless supplies the necessary "accurate and logical bridge,"
<u>Woods</u>, 888 F.3d at 694 (internal quotation marks omitted), between
the evidence and his findings that Plaintiff's obesity and right
knee osteoarthritis (A) qualified as severe (<u>see</u> Tr. 29) but (B)
did not cause limitations greater than the sitting, standing, and

33

walking requirements of sedentary work with additional restrictions on climbing and exposure to environmental elements (see Tr. 31).

First, Plaintiff relies solely on his own subjective statements to support his argument that the RFC should have 1) included express limits on how long Plaintiff could sit, stand, and walk at one time, and 2) addressed how often Plaintiff must change position. (Docket Entry 15 at 10-12 (citing Tr. 67-70, 73, 267, 401).)[11] The ALJ, however, found that, "[a]s for [Plaintiff]'s statements about the intensity, persistence, and limiting effects of his . . . symptoms, the record does not support the alleged severity of the impairments" (Tr. 32), a finding Plaintiff did not challenge (see Docket Entry 15). Moreover, none of Plaintiff's medical providers opined that Plaintiff's impairments necessitated greater limits on how long Plaintiff could sit, stand, or walk than the RFC currently reflects, and none opined that Plaintiff needed to change positions at any particular frequency, which significantly undermines Plaintiff's argument. See Lamonds v. Berryhill, No. 1:16CV1145, 2017 WL 1906755, at *10 (M.D.N.C. May 9, 2017) (unpublished) ("[T]he ALJ's omission of a sit/stand option from the RFC . . . does not constitute error, because no medical

---

[11] Although Plaintiff maintains that Dr. Fields noted that "'[Plaintiff] is unable to comfortably sit or stand for any period of time and he cannot lift any weight or walk any distance comfortably'" (Docket Entry 15 at 10-11 (quoting Tr. 401)), that statement appears in the initial portion of Dr. Fields's report and clearly reflects Plaintiff's subjective statements to Dr. Fields. Dr. Fields's physical examination led him to assess only unspecified "ambulatory limitations" (Tr. 402), and Plaintiff has made no argument that the RFC's limitation to sedentary work did not adequately accommodate that vague opinion (see Docket Entry 15).

34

source of record opined that [the p]laintiff required a sit/stand option."), recommendation adopted, slip op. (M.D.N.C. May 24, 2017) (Schroeder, J.); Spicer v. Astrue, No. CIV. 11-3679, 2013 WL 951582, at *14 (D. Minn. Feb. 11, 2013) (unpublished) (rejecting the plaintiff's argument that "ALJ failed to include a sit/stand option at will in the RFC finding," which "[wa]s supported by her testimony that she cannot sustain any posture for very long due to constant pain," where "[n]o physician gave her th[at] restriction" and "the record d[id] not otherwise support a sit/stand at will limitation"), recommendation adopted, 2013 WL 950850 (D. Minn. Mar. 12, 2013) (unpublished).

Second, the ALJ's evaluation of the opinion evidence supports the sitting, standing, and walking limitations in the RFC. In that regard, the ALJ found "persuasive" the opinions of the state agency medical consultants that Plaintiff remained capable of two hours total of standing and walking and six hours total of sitting in an eight-hour workday (see Tr. 96-97, 108-09), but added significant environmental restrictions (see Tr. 31), which further account for Plaintiff's obesity, see SSR 19-2p, 2019 WL 2374244, at *4 ("Obesity may also affect a person's ability to . . . tolerate extreme heat, humidity, or hazards.").

Third, the ALJ's discussion of the medical evidence relating to Plaintiff's obesity and right knee osteoarthritis makes clear that the ALJ properly considered the evidence regarding Plaintiff's

35

abilities to sit, stand, and walk.  In that regard, the ALJ noted
that:

- "[T]he August 2015 evidence shows that [Plaintiff]
  maintained <u>normal gait</u> and <u>strength</u> as well as
  <u>intact knees</u>. . . .  The evidence shows physical
  examination findings, including being globally
  obese, but <u>neurologically normal</u> despite edema of
  the extremities.  These findings were unchanged
  from July 2015."  (Tr. 32-33 (emphasis added)
  (internal citations omitted) (citing Tr. 386, 429-
  35));

- "The November 2015 medical consultative examination
  report shows that he weighed 475 pounds.  The
  report further shows that he had an antalgic gait
  secondary to lower back pain and knee pain, but <u>he
  did not use assistive devices</u>.  This is consistent
  with the July and August 2017 physical examination
  findings."  (Tr. 33 (emphasis added) (internal
  citations omitted) (citing Tr. 401-02, 445));

- "The March 2018 evidence shows that [his] BMI was
  84.4, but the physical examination was generally
  <u>normal</u>, including normal respiratory,
  <u>musculoskeletal, and neurological functioning</u>.
  This is reasonably consistent with the May 2018
  evidence and physical examination findings.
  Although he weighed 529 pounds as of August 2018,
  he still maintained <u>normal range of motion</u>.  The
  September 2018 evidence showed normal physical
  examination findings, including <u>normal gait</u>,
  cardiovascular[] and respiratory functioning[,
  and] . . . <u>range of motion</u>."  (<u>Id.</u> (emphasis added)
  (internal citations omitted) (citing Tr. 450, 452,
  459, 472, 484, 488));

- "The October 2018 evidence shows <u>normal gait</u> in
  addition to normal cardiovascular and respiratory
  functioning.  The November 2018 evidence shows that
  [his] BMI was 76.94[, but] . . . he maintained
  <u>normal gait</u>, respiratory, and cardiovascular
  functioning . . . .  The December 2018 evidence
  showed <u>normal gait</u> as well as normal cardiovascular
  and respiratory functioning despite his BMI being
  73.5.  The January and February 2019 evidence shows
  normal physical examination findings, including

36

normal respiratory and cardiovascular functioning
as well as <u>normal gait</u>." (<u>Id.</u> (emphasis added)
(internal citations omitted) (citing Tr. 517, 528,
530, 532, 583, 585)); and

- "[T]he record does not reflect that his ability to
ambulate was significantly limited to the extent
that required an assistive device[, as] the
evidence generally shows that his gait was
normal . . . ." (<u>Id.</u>)

As discussed above, the ALJ also observed that Plaintiff's
daily activities and work history remained inconsistent with his
allegations of disabling symptoms. (<u>See</u> Tr. 32, 35.) That
analysis suffices to show that the ALJ complied with <u>Mascio</u> and SSR
96-8p by appropriately evaluating Plaintiff's abilities to sit,
stand, and walk. Moreover, by pointing to record evidence
Plaintiff believes supports greater limitations on his abilities to
sit, stand, and walk, he misinterprets this Court's standard of
review. The Court must determine whether substantial evidence,
i.e., "more than a mere scintilla of evidence but . . . somewhat
less than a preponderance," <u>Mastro</u>, 270 F.3d at 176 (brackets and
internal quotation marks omitted), supported the ALJ's findings
regarding Plaintiff's abilities to sit, stand, and walk, and not
whether other record evidence weighs against those findings, <u>see</u>
<u>Lanier v. Colvin</u>, No. CV414-004, 2015 WL 3622619, at *1 (S.D. Ga.
June 9, 2015) (unpublished) ("The fact that [the p]laintiff
disagrees with the ALJ's decision, or that there is other evidence
in the record that weighs against the ALJ's decision, does not mean
that the decision is unsupported by substantial evidence.").

37

Finally, as the Commissioner argues, "Plaintiff's reliance on Dowling[] is misplaced" (Docket Entry 17 at 15) because, in that case, the plaintiff suffered from two medically determinable impairments, inflammatory bowel disease and an anal fissure, which "caused her to experience discomfort when she s[at] for a prolonged period of time," Dowling, 986 F.3d at 388. In contrast, here, Plaintiff has supplied only vague and conflicting statements explaining what limits his ability to sit. (See Tr. 69-70 (testifying: "[S]itting here, I've already needed to get up. I've been sitting here, but just dealing with the pain, you know; I'm uncomfortable. So, but then, in the chair, I could maybe sit for, you know, 20 minutes, or 30 minutes . . ." (emphasis added)), 267 (checking box "Sitting" on Function Report and stating "I am unable to complete the items checked due to morbid obesity" (emphasis added)).)

In light of the foregoing analysis, the Court should deny relief on Plaintiff's third and final assignment of error.

### III. CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 14) be denied, that

38

Defendant's Motion for Judgment on the Pleadings (Docket Entry 16)

be granted, and that this action be dismissed with prejudice.


                                    /s/ L. Patrick Auld
                                **L. Patrick Auld**
                        **United States Magistrate Judge**


December 9, 2021